# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | Criminal Action No. |
| v. | ) | 2:16-CR-0009-RWS-JCF |
| | ) | |
| NATHAN ANTONIO HOWARD, et al., | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION TO SUPPRESS WIRETAP EXTENSION FOR FAILURE TO FILE AN APPLICATION AND AFFIDAVIT OR OBTAIN AN ORDER AUTHORIZING INTERCEPTION

COMES NOW, defendant NATHAN ANTONIO HOWARD, by and through undersigned counsel, and on behalf of ALL DEFENDANTS, hereby moves to suppress the continued interception of (470) 266-9147 because no application and affidavit was filed and no order was ever entered authorizing the continued interception.

## FACTS

GBI Special Agent Clay Bridges was one of two case agents in the wiretap investigation resulting in this case. T-13.[1] The second case agent was FBI S/A Thompson. T-161. As one of the case agents, S/A Bridges was responsible for

---

[1] Citations to the transcript of the evidentiary hearing held on June 29 and 30, 2016 will be cited as "T-".

managing the investigation, writing orders, and writing applications for warrants, such as search warrants and wiretaps. T-13-14.

Government Exhibits 6 and 7 are the application and affidavit, respectively, seeking authorization for the continued interception of 470-266-9147. Defense Exhibit 1 is a certified copy of Government Exhibit 7, the affidavit allegedly submitted in support of the wiretap extension. Government Exhibit 8 is the order purportedly authorizing the continued interception of 470-266-9147.[2]

Timothy Quick, the Stephens County Clerk of Court since 2009, testified that when a pleading is filed with the Clerk of Court, the pleading is timestamped. T-306. Every pleading that is filed will be timestamped. T-307. However, Governments Exhibits 6, 7, 8, 9, 19, 20, 21, and 22 do not have a timestamp and so were never properly filed with the Court. T-307-08.

Mr. Quick testified that the process for filing a pleading under seal is that a court orders it to be filed under seal and then the Clerk's Office files and puts it in a sealed envelope. T-308. However, the Clerk's Office cannot on its own initiative decide to file something under seal; a court order is required. T-308. Neither a private attorney nor a district attorney can place a pleading under seal without a court order. T-309. The court order always is written, not oral. T-310.

---

[2] The failure to properly seal the Blu-Ray containing the original intercepts is addressed in a separate motion.

In the present case, Mr. Quick placed the wiretaps pleadings presented to him by DA Christian and S/A Bridges in one of five white envelopes. T-313. The documents in three of the envelopes were provided on January 26, 2016., T-319. Mr. Quick did not review any of the documents when they were provided to him. T-314. In fact, the documents were provided to him face down on a table. T-314. Without question, Mr. Quick put every one of the documents he was handed into the appropriate envelope. T-320. There never was an occasion where Mr. Quick was handed an attachment to one of the documents which he removed and failed to place into the envelope. T-321. As a result, Mr. Quick did not even realize that they purportedly were wiretap pleadings. T-314. Furthermore, DA Christian never instructed Mr. Quick to file the pleadings. Instead, Mr. Christian told Mr. Quick that "something would be coming down the pipe and [asked] if I would just hold onto it." Defendants Exhibit 2 at 62.

The envelope dated February 3, 2016 contained the application, affidavit and order for the continued interception of 470-266-9147. T-323-24. The documents in the envelope were in the same condition as when they were provided to Mr. Quick. T-324.

The affidavit in the envelope for the extension was a copy of Government's Exhibit 7. T-324. Defendant's Exhibit 1 is a certified copy of the wiretap extension affidavit. T-325; <u>see</u> D.Exh 1. There was not an attachment to Government's

Exhibit 7, the affidavit supporting the extension. T-328. Had Mr. Quick been provided an attachment to the affidavit, he would have placed it in the envelope. T-329-30.

Moreover, there was not an original pleading of the order purportedly authorizing the continued interception (Government's Exhibit 8) in the February 3rd envelope. T-325. If S/A Bridges or DA Christian had given Mr. Quick the order (G.Exh. 8), then it would have been in that envelope. T-325. It was not. Not surprisingly, Government's Exhibit 8 does not contain a stamp from the Clerk's Office indicating that it had ever been filed. T-327-28. In dramatic fashion, counsel for the Government had Mr. Quick review the entire file from the Clerk's Office. The original of Government's Exhibit 8 was not contained in the file. T-340. The Government did not ask Mr. Quick to try on a glove.

Similarly, Government's Exhibit 6 and 7 (application and affidavit, respectively) also do not contain a stamp from the Clerk's Office indicating that either had ever been filed. T-328.

The affidavit in support of the continued interception of 470-266-9147 referenced did not contain a "necessity" section, but rather referenced an "Attachment 1" that purportedly was attached to the affidavit. T-37-38.[3] However,

---

[3] The Government contends that Attachment 1 was the January 4, 2015 Application, Affidavit, and the original insufficient Order, Government's Exhibits 1, 2, and 3. T-39.

4

the certified copy of that pleading, Government's Exhibit 7, does not contain an attachment. T-38; see Defense Exhibit 1.

S/A Bridges claimed he provided the extension and Attachment 1 to the Judge on February 3, 2016. T-39. Later, S/A Bridges claimed that the Attachment 1 was left with either the Judge or the Clerk's office. T-45. S/A Bridges could not recall where he met the Judge on February 3rd to have the extension signed, either Habersham County or Stephens County. T-123-24.

S/A Bridges claimed Attachment 1 was present, although the Judge did not read it. T-122. S/A Bridges claimed the extension application, affidavit and order were either in his possession or DA Christian's possession until he presented them to the Stephens County Clerk of Court, but he cannot recall for certain. T-124. When pressed by the AUSA, S/A Bridges had no explanation for why the Clerk's Office did not have a copy of Attachment 1. T-46. No longer possibly blaming the Judge for absconding with Attachment 1, S/A Bridges now placed sole blame on the Clerk of Court, claiming he presented it to the Clerk of Court to be sealed. T-46, 125. S/A Bridges claims either the Clerk of Court, Tim Quick, or his deputy made a copy of the wiretap pleadings for S/A Bridges and then placed the original in a binder or a folder. T-126.

---

Adding to the mystery, the Government does not explain "why" S/A Bridges would have included an order that was not legally adequate and which had to be supplemented, but failed to include or attach the supplemental order.

Then, on the second day of the evidentiary hearing, despite testifying about this subject at significant length, S/A Bridges changed his story. Now he claimed that Attachment 1 only contained the original Affidavit (G.Exh. 2), not the application and order. T-243.

On the second day of the evidentiary hearing, S/A Bridges also changed – at least temporarily -- his testimony about where he met with the Judge. S/A Bridges changed his testimony, saying that he met with the Judge in the lobby of a conference center in Athens, Georgia. T-255. S/A Bridges claimed he then drove back to Stephens County, although he may have stopped on the way and gotten out of his car. T-259. S/A Bridges claimed he recalls bringing the wiretap pleadings that Judge Smith had just signed into the Clerk of Court's office, but cannot remember who he met with or how he brought the pleadings into the office, such as in his backpack or in an envelope. T-261. S/A Bridges does not recall who he gave the pleadings to, or what the person did with the pleadings. T-262. He just recalls requesting a copy. T-262.

Then, on cross-examination, S/A Bridges changed his story yet again. Now, S/A Bridges was not even sure if he went to Athens to have the extension signed: "I'm not sure if it was in Athens or not. I'm saying it could have been in Athens, yes." T-263.

# DISCUSSION

**A. The Constitution And Congress Require Strict Adherence To Title III's Requirement Of Forthright Governmental Disclosure**.

Wiretapping is an "extraordinary investigative device." United States v. Giordano, 416 U.S. 505, 527 (1974). Unlike other searches, it is conducted without notice. Berger v. New York, 388 U.S. 41, 60 (1967). It places an "invisible policeman" "in the bedroom, in the business conference, in the social hour," at the dinner table, and "in the [doctor]'s office" for weeks and months on end. Id. at 64-65 (Douglas, J., concurring). The wiretap intrudes upon the privacy of not just the named target, but each of the numerous individuals with whom the users of the target telephones conversed and for whom the government makes no claim of probable cause. Because the wiretap, by its nature, "sweep[s] in all conversations within its scope - without regard to the participants or the nature of the conversations," it "intrudes upon the privacy of those not even suspected of crime and intercepts the most intimate of conversations." Id. at 65. Accordingly, only "special facts" showing "exigency," Id. at 60, can create a "genuine need" for government officials to secretly intercept private conversations, Dalia v. United States, 441 U.S. 238, 250 (1979).

The Federal Wiretap Act "generally forbids the intentional interception of wire communications, such as telephone calls, when done without court-ordered authorization." United States v. Workman, 80 F.3d 688, 692 (2d Cir.1996). "It

protects an individual from all forms of wiretapping except when the statute specifically provides otherwise." United States v. Hammond, 286 F.3d 189, 192 (4th Cir.2002) (internal quotation marks omitted).

Moreover, because that exceptional intrusion is triggered by the government's use of an *ex parte* application process, interposing a neutral and independent decision maker between the individual and the "officer engaged in the often competitive enterprise of ferreting out crime," Johnson v. United States, 333 U.S. 10, 14 (1948), is imperative. "[B]ypassing a neutral predetermination of the scope of a [wiretap] search," the Supreme Court has stressed, would "leave[] individuals secure from Fourth Amendment violations only in the discretion of the police." Katz v. United States, 389 U.S. 347, 358-59 (1967) (internal quotation omitted). Impartial and fully informed "antecedent justification" by a court is thus "a constitutional precondition of ... electronic surveillance." Id. at 359.

Title III's requirement that the government provide the authorized court with a "full and complete statement of the facts and circumstances" establishing probable cause and a "full and complete statement" of the other "investigative procedures [that] have been tried" and the reasons that other measures would "be unlikely to succeed," 18 U.S.C. § 2518(1)(b),(d), are the backbone of the statute's requirement that "[t]he district judge, not the agents, must determine whether the command of Congress has been obeyed." United States v. Spagnuolo, 549 F.2d

705, 711 (9th Cir. 1977). Unless the government sets forth the relevant facts and circumstances comprehensively and candidly, the court cannot make the "independent evaluation of the matter" that both Title III and the Fourth Amendment require. Franks v. Delaware, 438 U.S. 154, 165 (1978); see United States v. Gigante, 538 F.2d 502, 503 (2d Cir. 1976) (Title III was designed "to ensure careful judicial scrutiny"); see United States v. Ferguson, 758 F.2d 843, 848-49 (2d Cir. 1985) (applying Franks to wiretap affidavit). And, of course, "when the Fourth Amendment" and Title III "demand[] a factual showing," the "obvious assumption is that there will be a *truthful* showing" by the government. Franks, 438 U.S. at 164-165 (quotation omitted) (emphasis in original). The use of intentionally or recklessly false statements – including sins of omission – in wiretap affidavits is "an unthinkable imposition" on the ability of the court to "determine independently whether there is probable cause." Id. at 165.[4]

Indeed, the "necessity requirement exists in order to limit the use of wiretaps." United States v. Bennett, 219 F.3d 1117, 1121 (9th Cir.2000) (internal quotation marks omitted) (quoting United States v. Commito, 918 F.2d 95, 98 (9th

---

[4] The "bulwark of Fourth Amendment protection, of course, is the Warrant Clause." Franks, 438 U.S. at 164. In deciding that "a challenge to a warrant's veracity must be permitted" the Franks court stated: "we derive our ground from language of the Warrant Clause itself, which surely takes the affiant's good faith as its premise: '[N]o Warrants shall issue but on probable cause, supported by Oath or affirmation.'" Id.

Cir.1990)). "Congress was concerned lest overzealous law enforcement officers rely excessively upon such techniques in lieu of less intrusive investigative procedures." United States v. King, 478 F.2d 494, 503 (9th Cir.1973). Therefore, Title III was enacted to address the "grave threat to the privacy of every American that is posed by modern techniques of electronic surveillance." Id. (citation omitted).

To enforce Title III's stringent requirements, Congress enacted a distinct statutory rule of suppression that supplements the "judicially fashioned exclusionary rule aimed at deterring violations of Fourth Amendment rights." Giordano, 416 U.S. at 524. Title III's statutory suppression rule mandates the exclusion in court proceedings of "the contents of any [wiretap], or evidence derived therefrom" if the wiretap evidence "was unlawfully intercepted," 18 U.S.C. § 2518(10)(a)(i), i.e., "where there is failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." Giordano, 416 U.S. at 527. Because the "full and complete statement" provisions "play a central role in the statutory scheme," suppression "must follow when," as here, those provisions "ha[ve] been ignored" by the government. Id. at 528.

The statutory suppression remedy extends not only to unlawfully obtained wiretap interceptions, but also to "evidence derived therefrom." In Giordano, the Supreme Court ruled – in language that speaks directly to the case at hand – that "evidence derived" from an initial unlawful interception includes subsequent applications that rely upon the initial submission and intervening wiretaps to establish probable cause. Id. at 529-31.

**B.   There was no order authorizing the continued interception of 470-266-9147.**

Government Exhibits 6 and 7 are the application and affidavit seeking authority to intercept 470-266-9147. However, neither document bears a time stamp from the Clerk of Court. Government Exhibit 8 is the order signed purportedly authorizing the continued interception of 470-266-9147. However, this order does not bear a time stamp from the Clerk of Court. As the Stephens County Clerk of Court testified, when a pleading is filed with the clerk of court, the pleading is timestamped. T-306. Every pleading that is filed will be timestamped. T-307.

Because the application and affidavit were never filed with the Court, the purported order was signed without the government complying with the probable cause and necessity showing required by statute. For this reason alone, any resulting order would be ineffective. More importantly, since the order was signed, but not properly filed with the Clerk of Court, the order never became effective.

See Milam v. Mojonner Bros. Co., 135 Ga.App. 208, 217 S.E.2d 355 (1975) ("However, after the trial judge signed the order on January 10th, it was not filed with the clerk, and therefore it never became an order of court by proper entry in the records of the trial court.") see also O.C.G.A. § 9-11-58(b) (statute governing entry of judgment in Civil Practice Act: "The filing with the clerk of a judgment, signed by the judge, with the fully completed civil case disposition form constitutes the entry of the judgment, and, unless the court otherwise directs, no judgment shall be effective for any purpose until the entry of the same, as provided in this subsection."); Taylor Timber Co. v. Baker, 226 Ga.App. 211, 485 S.E.2d 819 (1997) (Superior court no longer had jurisdiction to enter binding attorney fee award for frivolous appeal of workers' compensation action under statute requiring that judgment be entered within 20 days of hearing, as it was not filed until 23 days after hearing even though court's order was signed within 20 days); Andrew L. Parks, Inc. v. SunTrust Bank, 248 Ga.App. 846, 545 S.E.2d 31 (2001) (order dismissing case with prejudice, which was signed but not filed before order dismissing case without prejudice was signed and filed, had no legal effect and was nullity having not been filed when case was still lawfully pending); see also 56 Am.Jur.2d 32, Motions, Rules and Orders, s 38 (an orders is not complete until filed or recorded).

Even the Judge who signed the orders, testified that "I think under Georgia law, any order – I think there are cases that say that any order that's not reduced to writing and filed with the clerk is a nullity. It's ineffective for any purpose." D.Exh 2 at 32-33. In a case originating in Stephens County, Shirley v. Abshire, 288 Ga. App. 819, 655 S.E.2d 694 (2007), the Georgia Court of Appeals reversed a trial court's contempt finding "[b]ecause the trial court's finding of contempt was based upon a violation of a verbal order which had not been reduced to writing, signed and filed, the contempt order must be reversed." Id. at 819. "Until an order is signed by the judge and filed, it is ineffective for any purpose." Id. at 820 (citation omitted).

Accordingly, there was not a lawful order authorizing the interception of 470-266-9147. All evidence derived directly or indirectly therefrom should be suppressed

**C.  The Affidavit was not filed and thus did not establish probable cause for the continued interception of 470-266-9147.**

Like the order, the application and affidavit prepared in support of the continued interception of 470-266-9147 were not filed with the Court.

Title III requires that the government provide the court with:

> a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including (i) details as to the particular offense that has been, is being, or is about to be committed, (ii) except as provided in

13

> subsection (11), a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted, (iii) a particular description of the type of communications sought to be intercepted, (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted.

18 U.S.C. § 2518(1)(b).

Neither Government Exhibit 6 (the application) nor Government Exhibit 7 (the affidavit) bears a time stamp from the Clerk of Court. As the Stephens County Clerk of Court testified, when a pleading is filed with the Clerk of Court, the pleading is timestamped. T-306. Every pleading that is filed will be timestamped. T-307.

Since the application and affidavit were never timestamped, and thus not filed with the Court, there was not even an attempt to establish a "full and complete" statement of probable cause and the other information required under section 2518(b). Likewise, and for the same reasons, there was not even an attempt to establish "necessity" for the continued interception.

Accordingly, the extension wiretap of 470-266-9147 should be suppressed, including evidence derived indirectly from the illegal intercepts.

**D. The Affidavit did not establish necessity for the continued interception of 470-266-9147.**

Even if the Affidavit could somehow deemed to have been filed with the Court, the Affidavit failed to establish "necessity" for the continued interception of 470-266-9147.

Title III also requires "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(c). This is known as the "necessity" section.

The certified copy of the affidavit submitted in support of the continued interception of 470-266-9147 does not contain a "necessity" section. Defense Exh. 1. Instead, the "necessity" section of the affidavit simply references Attachment 1. The certified copy of the affidavit does not contain Attachment 1. Defense Exh. 1. S/A Bridges attempted to claim that the Attachment 1 existed at some point in time. However, the credible testimony from Mr. Quick, the Clerk of Court and the questionable reliability of S/A Bridges shifting testimony prove the contrary. Attachment 1 never was attached to the Affidavit.

As such, the affidavit fails completely to establish that other "investigative procedures [that] have been tried" and the reasons that other measures would "be unlikely to succeed," 18 U.S.C. § 2518(1)(c). In other words, the affidavit fails to establish "necessity" for the continued interception of 470-266-9147.

Accordingly, the extension wiretap of 470-266-9147 should be suppressed, including evidence derived indirectly from the illegal intercepts.

**CONCLUSION**

For the foregoing reasons, the continued interception of (470) 266-9147 should be suppressed because no order was ever entered authorizing the continued interception, and no affidavit establishing "necessity" was ever filed.

Respectfully submitted on this the 6th day of October, 2016.

THE RICE LAW FIRM, LLC

*/s/ Richard A. Rice, Jr.*

RICHARD A. RICE, JR.
GA Bar No. 603203
richard.rice@trlfirm.com

3495 Piedmont Rd NE
10 Piedmont Center, Suite 110
Atlanta, GA 30305
404.835.0783
404.481.3057 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing, which was prepared using Times New Roman 14-point font, was served electronically by operation of the Court's CM/ECF system, which will automatically send notice of such filing to all counsel of record.

This 6th day of October, 2016.

*/s/ Richard A. Rice, Jr.*
Richard A. Rice, Jr.